(38 App. Div. 115.)

McLEOD v. MINER et al.

(Supreme Court, Appellate Division, First Department.   March 10, 1899.)

1. CHATTEL MORTGAGES—EQUITABLE LIENS—PRIORITIES.
    It was agreed, between plaintiff and a mortgagor of a leasehold and fixtures, that plaintiff should advance, on security, and in consideration of an interest in the business, a sum to be used in improving the property and in paying the mortgage; the mortgagee agreeing that, on payment of his claim by a certain date, he would assign it and a contingent interest in the business to the mortgagor. *Held* that, where the mortgage was not paid as agreed, its lien was not postponed to plaintiff's right to reimbursement for advances for improvements.

2. PARTNERSHIP—WHAT CONSTITUTES—CONTINGENT INTERESTS.
    An agreement whereby a mortgagee is to have an interest in the business of the mortgagor after the mortgagee is paid out of the profits of the business does not make the mortgagee a partner of the mortgagor before payment.

Appeal from special term, New York county.

Action by Philip H. McLeod against George J. Kraus and others. From a judgment in favor of defendant Henry C. Miner, plaintiff appeals. Affirmed.

Omitting formal parts, the complaint and the separate answer of defendant Henry C. Miner are as follows, viz.:

"The plaintiff above named, by Hatch & Wickes, his attorneys, complaining of the defendants, alleges:

"(1) That heretofore, and on or about the 15th day of September, 1895, the defendants made and entered into a certain agreement wherein and whereby they became jointly interested as co-partners in a certain enterprise, which had for its object the erection and completion and management of the Imperial Music Hall, situated at Broadway and Twenty-Ninth street, in the city of New York, and from and after the 15th day of September, 1895, the defendants were, and ever since have been, jointly interested as such co-partners.

"(2) Thereafter, and on or about the 12th day of October, 1895, the plaintiff made and entered into a contract, a copy of which is hereto annexed, marked 'Exhibit A,' and made a part hereof.

"(3) That said contract was made and entered into by the plaintiff on the distinct representation of the defendants that they were all jointly interested in said co-partnership, and that said Henry C. Miner owned one-half interest therein, and that the amount of five thousand dollars, named in said agreement to be paid to defendant Kraus, would fully complete and equip and open the Imperial Music Hall. That the plaintiff made and entered into said contract relying solely upon representations made as aforesaid, and duly paid to the defendants the sum of five thousand dollars. On the 15th day of November, 1895, the defendant Henry C. Miner served a written notice on the plaintiff, wherein and whereby he canceled the said contract on the ground that the plaintiff had not paid to him the sum of fifteen thousand dollars, which money he claimed to be entitled to under the said contract.

"(4) That the plaintiff declined to make said payment of fifteen thousand dollars because the said sum of five thousand dollars was wholly insufficient to complete said building, and he had been notified that dispossess proceedings had been commenced against the premises of the said Imperial Music Hall, and which were instituted for rent, amounting in the aggregate to about $3,900; that the outstanding contracts for the completion of the building amounted to over $10,000; and that the Ruppert mortgage, referred to in said agreement, instead of being $20,000, amounted to $22,800, and he had been grossly deceived in regard to the financial affairs of said Imperial Music Hall and the amount necessary to complete the same.

"(5) Thereafter the defendants made and entered into a contract with one C. H. Butler, who was acting for the plaintiff herein, wherein and whereby the defendants agreed to give to the said Butler a lien on the receipts of the said Imperial Music Hall, and to secure him for all advances he might make. A copy of said agreement is hereto annexed, marked 'Exhibit B,' and made a part hereof.

"(6) That at the time the said advances were made, which was prior to the discovery by the plaintiff, or any one acting in his behalf, of the amount necessary for the payment of the rent- or the completion of the building, and the defendants represented to the plaintiff and to said C. H. Butler that an additional amount, not to exceed $2,000, would complete said building, but said Butler declined to advance any sums until the receipts of said Imperial Music Hall were properly assigned to him to secure the payment thereof; that under such agreement said Butler advanced to, the defendants various sums, which amounted in the aggregate to $2,475, and said Butler made such advances acting on behalf of the plaintiff, and thereafter duly assigned to said plaintiff the said agreement.

"(7) That thereafter, and on the earnest request of the defendants, plaintiff advanced divers sums of money to the defendants, amounting to $3,000.

"(8) That all such advances were made on the distinct understanding and agreement that the entire receipts of the Imperial Music Hall would be applied to the payment thereof, and that the plaintiff would be repaid for all sums which he advanced.

"(9) That all of the moneys advanced by the plaintiff, either directly, or through said C. H. Butler, have been applied exclusively to the improvement and completion of the property of the defendants the Imperial Music Hall, and no payments were made to any person by the plaintiff, except for the object and purpose of the co-partnership existing between the plaintiff and the defendants; and the defendants, ever since the 15th day of September, 1895, have been interested in said leasehold, and said leasehold and property thereon constitute the capital and assets of the co-partnership existing between them, and on the improvement and completion of which the moneys advanced by the plaintiff have been exclusively applied.

"(10) That the plaintiff has made demand upon the defendants for the return of the money so paid by him, and they have refused to pay the amount, or any part thereof; and the plaintiff has also demanded that the receipts of said music hall be applied to the payment of his debt, and they have refused to so apply the said receipts, and they have notified the plaintiff that

they will not recognize his claim, and that they will not apply the receipts in accordance with the agreement, and in no manner whatsoever, towards the payment of this indebtedness, but have notified him that they refuse to recognize his interest or claim therein in any manner whatsoever.

"(11) The only co-partnership asset of the defendants is the said Imperial Music Hall, and the defendant Miner has repudiated and refused to pay any of the debts of the said music hall co-partnership, and the plaintiff fears that the assets of the said music hall will be misapplied, and will not be applied to the payment of his debt, and will be applied to the payment of other debts, in fraud of the plaintiff's rights, and that the plaintiff will thereby lose his security, on the faith of which he advanced the sum aforesaid.

"(12) That said music hall is now about completed, and is advertised to be opened on December 23, 1895, and payments are already being made for seats and entrance fees for the opening performance and subsequent performances, and the said receipts are not being applied to the payment of the plaintiff's claim, in accordance with the said agreement, and, unless the rights of the plaintiff are protected now, he will lose his lien on the said receipts, and will be greatly injured thereby.

"(13) That the description of the premises affected by this action, and on which the plaintiff seeks to impose a lien, is as follows: Those certain premises now occupied by the new Imperial Music Hall, in the city and county of New York, at the corner of 29th street and Broadway, being the same premises heretofore leased by one John J. White to one George Green on or about the 11th day of May, 1889, and the same leased or sublet to George J. Kraus on the 1st day of March, 1892, as appears from the records in the register's office of the city and county of New York, at Liber 16, page 190, which said leasehold estate was conveyed by the said George J. Kraus to Jacob Ruppert on the 23d day of May, 1892, which is reported in the said register's office, at Liber 16, page 185, sec. 3, blk. 831. Also the certain premises fronting on Broadway, leased by one Adelia Fitz Patrick to the said defendant George J. Kraus, now occupied by the entrance to said music hall, situated north and near the corner of 29th street and Broadway, in the city and county of New York.

"Wherefore the plaintiff demands judgment against the said defendants, and each of them, for $10,475, with interest thereon from the respective dates on which said sum was advanced; that a receiver be appointed of all the moneys of the said co-partnership of defendants, and especially of the receipts of said Imperial Music Hall; that the said sums advanced by the plaintiff be declared to be a lien on said leasehold premises, and upon the receipts of the said music hall, and that a receiver be appointed of the same; that the said lien be foreclosed, and said leasehold premises sold to satisfy same; and that the plaintiff have such other relief as to the court may seem just."

## Exhibit A.

"This memorandum of agreement, made and entered into this 12th day of October, 1895, by and between Fannie Kraus, George J. Kraus, and David Kraus, of New York City, of the city and county of New York, and Philip H. McLeod, party of the second part. This agreement is made in consideration of the sum of one dollar by each party in hand to the other paid, the receipts whereof are hereby mutually acknowledged, and also in consideration of the actual covenants of agreement herein contained.

"First, it is understood and agreed that the parties of the first part will forthwith cause to be incorporated, under the laws of the state of New York, a corporation to be known as 'Imperial Music Hall Company,' which shall have a capital stock of one hundred thousand dollars, divided into shares of one hundred dollars each, and that all of which stocks shall be issued for the good will, lease, furniture, and other chattels belonging and forming part of the property now known as the 'Imperial Music Hall,' situated at Broadway and 29th street, in the city of New York, subject only to a mortgage to Jacob Ruppert of not over twenty thousand dollars; that said lease shall be extended for at least ten years additional; that said company will

make, execute, and deliver another bond secured by mortgage on the said leasehold, furniture, and chattels in the sum of twenty thousand dollars, which shall be payable in not more than three years from the date hereof, and interest at the rate of six per cent., but with the agreement that, after the first day of January, 1896, the sum shall be paid out of the profits of the said company, if made, at the rate of two hundred and fifty dollars per week, except from June 1st to September 1st in each year, and which shall be subordinate to the said Ruppert mortgage.

"The party of the second part agrees that he will advance said company the full sum of twenty thousand dollars as consideration for the said mortgage, and the parties of the first part agree that they will sell and transfer to the party of the second part thirty-five per cent. of the entire capital stock of said corporation, for the sum of one dollar.

"It is also mutually agreed that there shall be three trustees of said corporation, and that the party of the second part, or any minority stockholder, can also cast his vote at any election of directors for one director, so that he will always be represented in the board of directors.

"It is also agreed that the treasurer of said corporation, who shall keep the funds thereof, shall be mutually agreed upon by the parties hereof.

"It is also understood and agreed that the parties of the first part shall be entitled to name the manager of said corporation, who shall have a salary of one hundred dollars per week, and the party of the second part shall be entitled to name the assistant manager (himself, if he shall so elect) of said corporation, who shall have a salary of fifty dollars per week, and that, until the payment of said mortgage, no other salaries shall be paid, except by mutual agreement.

"It is understood and agreed that the supplies now belonging to the party of the first part, which can properly be used in connection with said company and its business, can be taken over by the corporation at the price paid therefor by the parties of the first part, and to be paid to them as the same shall be used.

"It is understood and agreed that the party of the second part shall pay, on the signing of this contract, the sum of two thousand five hundred dollars on account of said mortgage, and shall, on delivery of the mortgage, pay $2,500 within one week from the date thereof, and balance, less amount payable to H. C. Miner, within two weeks from the date thereof; all of such amount to be used in and for the repairs and alterations now in progress on said Imperial Music Hall.

"It is further understood and agreed that the party of the second part shall pay to Henry C. Miner, out of such twenty thousand dollars, on account of said mortgage, the sum which the said Henry C. Miner has already advanced to the parties of the first part; on receipt whereof said Miner will satisfy all claims which he has on said lease, furniture, and chattels, and meanwhile shall hold the same as security for such payment.

"In witness whereof the parties hereto have hereunto set their hands and seals the day and year first above written.

|                        |          |
|------------------------|----------|
| "Fannie Kraus.         | [Seal.]  |
| "George J. Kraus.      | [Seal.]  |
| "David Kraus.          | [Seal.]  |
| "Philip H. McLeod.     | [Seal.]" |

"I, Henry C. Miner, hereby agree that I will assign the entire claim against Geo. J. Kraus and others, and assign all my interest in the Imperial Music Hall, and contracts relating thereto, on payment of amount advanced by me on or before November 15th, 1895.

"N. Y., Oct. 15, '95.                          Henry C. Miner,
                                        "By Chas. J. Davis, Atty."

Exhibit B.

"New York, November 2, 1895.

"Chas. Henry Butler, Esq., 1402 Broadway, City—Dear Sir: It was the understanding between Mr. McLeod and myself that he should have a mortgage on the Imperial Music Hall lease, subject to the Ruppert mortgage, for

$20,000, and, if the Ruppert mortgage exceeded that, I would make personal arrangements for its reduction to that amount. Mr. McLeod has paid $5,000, as required by the contract, and the balance of the $20,000 is to be paid to Mr. Miner before November 15th, 1895, to wit, $15,000. It will, however, take an additional amount to complete alterations, and this will be borne by myself personally, but I shall have to have some assistance to finance it, and whatever additional amount you advance to me on and after this date I will secure by my stock in the company and from the receipts of the music hall as soon as opened.

"Yours, very truly,          George J. Kraus."

"The separate answer of the above-named defendant Henry C. Miner respectfully shows to the court as follows: .

"First. This defendant denies each and every allegation contained in that paragraph of the complaint marked and numbered 1.

"Second. This defendant admits the allegations contained in that paragraph of the complaint marked and numbered 2.

"Third. This defendant admits that on the 15th day of November, 1895, he served, or caused to be served, a written notice on the plaintiff and the other parties to the agreement set forth in paragraph 2 of said complaint, wherein and whereby this defendant canceled his agreement to assign his interest in the Imperial Music Hall, and contracts relating thereto, on payment of amount advanced by him on or before November 15, 1895, on the ground that the sum of $15,000, which money he claimed to have been advanced by him, had not been paid; and this defendant denies each and every other allegation contained in that paragraph of the complaint marked and numbered 3.

"Fourth. This defendant denies, upon information and belief, each and every allegation contained in that paragraph of the complaint marked and numbered 4.

"Fifth. This defendant denies each and every allegation contained in that paragraph of the complaint marked and numbered 5.

"Sixth. This defendant denies each and every allegation contained in that paragraph of said complaint marked and numbered 6.

"Seventh. This defendant denies the allegations contained in that paragraph of the complaint marked and numbered 7.

"Eighth. This defendant denies each and every allegation contained in that paragraph of the complaint marked and numbered 8.

"Ninth. This defendant denies each and every allegation contained in that paragraph of the complaint marked and numbered 9.

"Tenth. This defendant admits that the plaintiff has made demand upon him for the return of the moneys alleged in the complaint to have been paid by him, and admits that this defendant has refused to pay the same or any part thereof; but this defendant denies that he has any knowledge or information sufficient to form a belief as to whether the plaintiff has made such a demand upon any of the other defendants to this action or whether such defendants have refused to pay the same. This defendant admits that the plaintiff has demanded from him that the receipts of the Imperial Music Hall be applied to the payment of the amount alleged to be due to the plaintiff, and that he has refused to have the said receipts so applied; and denies that he has any knowledge or information sufficient to form a belief as to whether the plaintiff has made such demand upon the other defendants to this action, or whether they have refused to so apply the said receipts. This defendant admits that he has notified the plaintiff that he will not recognize his claim, and that he will not apply the receipts of said music hall in accordance with the agreement entered into between this plaintiff and the other defendants; but this defendant denies that he has any knowledge or information sufficient to form a belief as to what the other defendants to this action have done in that connection; and this defendant denies each and every allegation contained in that paragraph of the complaint marked and numbered 10, except as hereinbefore specifically admitted or denied.

"Eleventh. This defendant denies that the said Imperial Music Hall constitutes an asset of any co-partnership between this defendant and the other

defendants to this action, and denies that the defendants to this action are co-partners in the ownership of said Imperial Music Hall. This defendant admits that he has repudiated and refused to pay, and will continue to repudiate and refuse to pay, any of the debts of any co-partnership alleged to exist between this defendant and his co-defendants. This defendant denies, upon information and belief, each and every allegation contained in that paragraph of the complaint marked and numbered 11, except as hereinbefore admitted or denied.

"Twelfth. This defendant admits that the said Imperial Music Hall is now about completed, and is to be opened on December 23, 1895, and that payments are already being made for seats and entrance fees for the opening performance and subsequent performances, and that the said receipts are not being applied to the payment of plaintiff's claim. This defendant alleges, upon information and belief, that the said plaintiff has no lien upon the said receipts, and never did have any lien on the said receipts, and that, therefore, he cannot be greatly injured by the failure to receive same.

"Thirteenth. This defendant admits that the description of the premises upon which the plaintiff seeks to impose a lien is correctly set forth in the thirteenth paragraph of said complaint.

"Fourteenth. This defendant denies each and every allegation in the complaint contained, and not hereinbefore specifically admitted or denied.

"And as and for a second, separate, and further defense this defendant alleges as follows: That heretofore, and on the 6th day of September, 1895, and prior thereto, he advanced to, and paid out for, Fannie Kraus, one of the defendants in this action, who at the time was erecting and completing the Imperial Music Hall, in the city of New York, the sum of $15,000, all of which money was used in the erection and completion of said premises, or in the payment of rent due upon the lease of said premises, and that, as security for the repayment of the said moneys so advanced to said Fannie Kraus, the said Fannie Kraus, and the other defendants to this action, executed, acknowledged, and delivered to him a chattel mortgage upon all their right, title, and interest in and to the scenery, properties, curtains, carpets, bar, bar fixtures, glassware, tables, gas fixtures, globes, and all other property of every kind and description contained in said Imperial Music Hall, and likewise all their right, title, and interest and equity in and to the leases of the said music hall premises; and that it was thereupon agreed, between this defendant and the said Fannie Kraus, that this defendant should have a first lien upon the business to be carried on in said Imperial Music Hall and the receipts of the same, and that out of the said receipts this defendant was to be paid the moneys advanced by him as aforesaid, before any moneys were paid to the said defendant Fannie Kraus. This defendant alleges that he never had any partnership agreement with the three co-defendants in this action, but that this defendant and the said Fannie Kraus did agree that after the said $15,000 had been paid to this defendant, that then and thereafter the receipts of the said business, after paying the expenses of running the same, were to be divided between this defendant and the said Fannie Kraus. That subsequently, and on or about the 12th day of October, 1895, the defendants Fannie Kraus, George J. Kraus, and David Kraus entered into an agreement with the plaintiff, a copy of which agreement is annexed to, and forms part of, the complaint; and that the parties to said agreement secured from this defendant an agreement, which is annexed to the agreement aforesaid, in the words and figures following, to wit:

" 'I, Henry C. Miner, hereby agree that I will assign the entire claim against George J. Kraus and others, and assign all my interest in the Imperial Music Hall, and contracts relating thereto, on payment of amount advanced by me on or before November 15, 1895.                     Henry C. Miner,
                                             " 'By J. Chas. Davis, Atty.'

"Or, in other words, the said George J. Kraus, Fannie Kraus, and David Kraus, together with the said plaintiff, proposed to pay this defendant the amount of money advanced by him, and then to take upon themselves the conduct of the said Imperial Music Hall through the medium of a stock company, as is set forth in the said agreement of October 12, 1895. That, how-

ever, no payments were made to this defendant, and the parties to the said agreement acknowledged to this defendant, on the 15th day of November, 1895, that they were unable to make said payments, and accordingly this defendant caused a notice to be served upon them, and each of them, canceling the said contract relative to the assigning of this defendant's interest in the said Imperial Music Hall. And this defendant further alleges that during all the time between the 12th day of October, 1895, and the 15th day of October, 1895, this plaintiff, and the defendants to this suit other than this defendant, held out the inducement and promise and assurance to this defendant that he would receive, on or before the 15th day of November, 1895, the moneys which had been advanced by him as aforesaid. That by reason of the failure of this plaintiff and the other defendants to this action to carry through their arrangement, and for the protection of this defendant, he, this defendant, was obliged to, and did, advance various sums of money towards the completion of the said Imperial Music Hall and the purchase of properties necessary for the same, to the end that the said Imperial Music Hall might be opened for business, and this defendant enabled to obtain the money so advanced by him from the receipts of the business to be carried on therein, and that this defendant has already advanced and paid out, or assumed obligations to advance and pay out, moneys amounting to about forty-five thousand dollars. That the sum of $15,000 was advanced by this defendant towards the erection and completion of the said music hall before the making of the agreement above referred to between this plaintiff and the defendants other than this defendant, and that the payments made by this defendant over and above the said sum of $15,000 have been made by this defendant since the failure of the parties to said last-mentioned agreement to pay this defendant such advances, and were made for the purpose of completing the said music hall, to which, and the business to be done in which, this defendant was obliged to look for the recovery of his money, inasmuch as the other defendants to this action are insolvent. And this defendant further alleges that the rent of the said premises is large, and comes due every three months; and that it will be necessary to make other and further advances and payments for the purpose of enabling business to be carried on in the said Imperial Music Hall, and that it would be a great injustice to this defendant, and would prevent his ever recovering the money so advanced by him, were the prayer of the complaint granted. Wherefore this defendant demands that the complaint be dismissed, with the costs of this action."

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Thomas P. Wickes, for appellant.
Ashbel P. Fitch, for respondent Henry C. Miner.

VAN BRUNT, P. J. This action was brought to establish an equitable lien upon the leasehold and other property constituting the Imperial Music Hall, of New York City, for moneys advanced by the plaintiff pursuant to an agreement, which moneys were used, with the knowledge, acquiescence, and consent of the defendant Miner, in completing alterations upon the property. It was claimed that the defendant Miner, being a partner or joint owner of the business and a party to the contract, induced the plaintiff to make the advances, refused to give the security agreed upon, and took the benefit of the moneys advanced; and that, by his active procurement, interference, inducement, and representation, the defendant is equitably estopped from claiming the benefit of his legal rights, which are postponed to the equitable lien of the plaintiff.

It appears from the evidence that the defendants Kraus had a

lease of premises in West Twenty-Ninth street and Broadway, in the city of New York, known as the "Imperial Music Hall," and that the defendant Miner had advanced to them about the sum of $15,000 for the purpose of making improvements upon said property. The premises were subject to a mortgage to one Ruppert. The defendants Kraus, in order to secure Miner for the advances which he had made, gave him a mortgage, dated September 10, 1895, upon the lease, fixtures, etc., in said music hall, for the sum of $15,000, said sum to be paid by the mortgagors on or before the 1st of September, 1896, out of the profits of the business conducted in said music hall or otherwise. The mortgage provided that, if the defendant Miner should at any time deem his loan unsafe, he might enter upon the premises and foreclose his mortgage. There appears also to have been an agreement between the defendants Kraus and Miner that, as an inducement to Miner to advance the money, after he should be repaid his loan, he was to be entitled to receive one-half the profits of the business carried on in the music hall. The advances of Miner not proving sufficient to carry out the improvements, the defendants Kraus sought other means of raising money; and on the 12th of October, 1895, an agreement was entered into between the Krauses and the plaintiff providing for the forming of a corporation to be known as the "Imperial Music Hall," which should have a capital stock of $100,000, divided into shares of $100 each, all of which was to be issued for the good will, lease, furniture, etc., of the property known as the "Imperial Music Hall," and to be subject only to a mortgage to Jacob Ruppert of not more than $20,000. It was further provided that the company should make, execute, and deliver to the plaintiff a mortgage for $20,000, which was to be subordinate to the Ruppert mortgage; and the plaintiff agreed to advance to the defendants Kraus the full sum of $20,000 in consideration thereof, the Krauses agreeing that they would sell and transfer to the plaintiff 35 per cent. of the entire capital stock of said corporation for the sum of $1. It was further provided that the plaintiff should, upon the signing of the contract, pay the sum of $2,500 on account of said mortgage, and should, on delivery of the mortgage, pay $2,500 within one week from the date thereof, and the balance (less the amount payable to Miner) within two weeks; all of which sums were to be used in the repairs and alterations then in progress on said music hall. The agreement further provided that the plaintiff should pay to Miner, out of said $20,000, the sum which Miner had already advanced, on receipt of which Miner was to satisfy all claims which he had on said lease, furniture, and chattels, and in the meantime was to hold the same as security for such payment. Upon the same day Miner executed an instrument by which he agreed that he would assign his entire claim against the defendants Kraus, and all his interest in the Imperial Music Hall and contracts relating thereto, on payment of the amount advanced by him, on or before November 15, 1895. The plaintiff advanced the $2,500 on the execution of the agreement, the company was incorporated, and the plaintiff paid other sums of money for the completion of the alterations in the building; but the amount due to Miner was not paid, and it

56 N.Y.S.—46

seems to have been impossible for the plaintiff to comply with the provisions of his contract in regard to the payment to Miner. Miner insisted that the amount due to him should be paid at the time agreed upon in the contract signed by him, and notified the parties that, if the payment was not made, he would elect to declare the contract broken, and proceed therein the same as if no contract had ever existed, and should take such further proceedings in the matter as he was legally entitled to. The amount not having been paid, Miner treated the original agreement between himself and the Krauses as subsisting, and claimed the interest in the property which was given to him by the chattel mortgage and the agreement with them. Various negotiations were carried on between the Krauses, the plaintiff's representative, and others without result. Rent becoming due, and not being paid, and dispossession proceedings pending, Miner advanced the amount of the rent, took up the Ruppert mortgage, and took possession of the property in pursuance of the terms of his mortgage.

Upon this state of facts, we fail to see any ground upon which the defendant Miner has become liable for the advances and breach of contract upon the part of the plaintiff. Miner consented to the arrangement between the Krauses and the plaintiff upon the express condition that he was to be repaid his advances on the 15th of November, 1895. He agreed to give up all his interest in the property, which agreement he made because of the plaintiff's promise to repay him his advances at a period earlier than the agreement between himself and the Krauses required such payment to be made. He was not repaid. He had notified the parties that time was of the essence of the contract, as appears upon its face, and he should not be held to his agreement without performance by the other parties of their part of the contract. It was upon the faith of the agreement entered into between the Krauses and the plaintiff that the latter advanced the moneys for the completion of the alterations in the music hall, and, when he had failed to comply with his part of the agreement as to Miner, it is difficult to see upon what theory Miner could be prevented from resorting to the securities which he had already had for the payment of his money. It would seem, upon a consideration of the case, that it was Miner who was induced to make the agreement he did because of the promise of the plaintiff, and not the plaintiff who was induced to make the advances which he did because of any representations held out by Miner. Under these circumstances, we know of no principle under which Miner could be compelled to pay the advances made by the plaintiff because the plaintiff had failed to comply with his contract to pay the advances which Miner had made, and thus release the property.

It is claimed that Miner cannot escape his liability as partner and tenant in common of this property for the advances made. There is no evidence whatever that he ever became a partner in this business. He was to become a part owner upon a contingency which never happened. After his $15,000 had been repaid to him under his original agreement with the defendants Kraus, he was to have a half interest in the property, but, until these advances had been repaid,

his only interest was that of mortgagee. It was so understood by all the parties, and, as already stated, that interest he agreed to give up if the plaintiff caused to be paid to him the advances he had made. The whole difficulty, so far as Miner is concerned, seems to have arisen because the plaintiff failed to comply with that portion of his agreement by which he agreed to discharge the indebtedness due to Miner; and, he having failed in this regard, we do not see how Miner can be prevented from attempting to secure himself by making use of the liens which he had upon the property. There seems to be no ground, therefore, for holding Miner liable for the advances of the plaintiff because the latter had failed to comply with his agreement to repay the sums advanced by Miner the benefit of which he was to get under his contract.

The judgment should be affirmed, but, as the defendants did not furnish the court with any points upon the argument of this appeal, without costs. All concur.